DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 INTRODUCTION {¶ 1} The juvenile court found T.R.H. was a neglected and dependent child and placed him in the temporary custody of the Summit County Children Services Board. His mother and stepfather have appealed, arguing there was no clear and convincing evidence to support its findings. This Court affirms because competent and credible evidence supports the juvenile court's decision. T.R.H.'s mother and stepfather allowed him to repeatedly miss counseling sessions, failed to attend counseling sessions with him, and allowed him to regularly miss taking his medication.
 FACTS *Page 2 {¶ 2} T.R.H. was born in 1996 and has exhibited behavioral problems since the age of three. He has been diagnosed in the past with having attention deficit hyperactivity disorder, mood disorders, and bipolar disorder. In November 2005, T.R.H.'s school notified his mother that T.R.H. had misbehaved and lied and had pushed, hit, and threatened other students. T.R.H.'s mother subsequently opened a voluntary treatment plan with Children Services and contacted an agency called Child Guidance and Family Solutions to seek counseling for T.R.H.
 {¶ 3} In January 2006, a therapist at Child Guidance began counseling T.R.H. Between January and July 2006, the therapist scheduled 25 sessions. T.R.H., however, only attended 14 of them. T.R.H. failed to appear for five sessions and his mother cancelled four others without explanation. His mother cancelled two more sessions because T.R.H. was in the hospital. T.R.H.'s therapist testified that the missed sessions hindered T.R.H.'s progress because too much time had to be spent at subsequent sessions updating her on what had happened since their last meeting.
 {¶ 4} T.R.H. also missed 6 of 13 scheduled psychiatric appointments. T.R.H.'s therapist testified that T.R.H.'s failure to attend those appointments prevented the psychiatrist from monitoring or changing the medication he had been prescribed. The therapist also testified that T.R.H. and his mother told her that he did not take his medication regularly. *Page 3 
 {¶ 5} Although Child Guidance had a policy prohibiting children under 13 from attending therapy sessions by themselves, and despite repeated encouragement to T.R.H.'s mother to attend T.R.H.'s sessions, T.R.H. was sometimes sent to counseling by himself. T.R.H.'s therapist testified that the sessions T.R.H.'s mother missed were less productive because T.R.H. was reluctant to speak without her there. T.R.H. also told the therapist that he got in trouble at home for talking with her about his family.
 {¶ 6} During his counseling sessions, T.R.H. described incidents of domestic violence that he had witnessed between his mother and stepfather. He saw his mother pushed down the stairs and also heard a lot of fighting between them. In March 2006, the police and Children Services received a report about one of those incidents. Following that incident, T.R.H.'s stepfather was not allowed to attend T.R.H.'s therapy sessions until he had completed his own counseling. Child Guidance also assigned T.R.H. an intensive case manager, who met with him in addition to his regular therapist.
 {¶ 7} Despite Child Guidance's efforts, T.R.H. continued to act out. In February 2006, T.R.H. set off a firecracker at school and fought with the principal. In March, he alleged he was sexually victimized on a school bus and became violent toward another student. In April, he had visual hallucinations, aggressive outbursts, and ran away from school. After T.R.H. ran away from school, school officials determined that he needed to be home-schooled. In June, T.R.H. alleged *Page 4 
he could not walk. In July, he ran away from home and became violent towards police officers. Following each incident, T.R.H. usually had to be taken to the hospital for medical or psychiatric care.
 {¶ 8} In June 2006, T.R.H.'s mother took him to a doctor to be treated for eczema. When T.R.H. removed his shirt, the doctor noticed two marks on his back that appeared to have come from a strap or paddle. T.R.H.'s mother admitted that she had tried to spank T.R.H., but that she accidentally hit his back when he tried to escape. When the doctor told T.R.H.'s mother that he had to report the incident to Children Services, she informed the doctor of the family's open case.
 {¶ 9} In July 2006, following his attempt to run away from home, T.R.H. alleged he had been forced to stand against a wall with his arms stretched out for two or three hours. When T.R.H.'s mother arrived at the hospital to pick him up, she was uncooperative with staff. She admitted that she and her husband had disciplined T.R.H. as he described, but said that it had been for only eight to ten minutes.
 {¶ 10} A few days after the July incident, Children Services filed a complaint alleging T.R.H. was an abused, neglected, and dependent child. In September 2006, a magistrate held an adjudicatory hearing. The magistrate dismissed the complaint of abuse, but found that T.R.H. was neglected and dependent. T.R.H.'s mother and stepfather filed objections to the magistrate's ruling, but the Summit County Court of Common Pleas, Juvenile Division *Page 5 
overruled them. T.R.H.'s mother and stepfather have appealed, assigning one error.
 CLEAR AND CONVINCING STANDARD {¶ 11} T.R.H.'s mother's and stepfather's sole assignment of error is that Children Services failed to present clear and convincing evidence that T.R.H. was neglected and dependent. See R.C. 2151.35(A)(1) (providing that a finding of neglect or dependency must be supported by clear and convincing evidence). "Clear and convincing evidence is that measure or degree of proof . . . which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford, 161 Ohio St. 469, paragraph three of the syllabus (1954). This Court must examine the record and determine whether the juvenile court had "sufficient evidence before it to satisfy this burden of proof." In re Adoption of Holcomb, 18 Ohio St. 3d 361,368 (1985). This Court "should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court judge." State v. Schiebel, 55 Ohio St. 3d 71, 74 (1990).
 NEGLECTED CHILD {¶ 12} The juvenile court found that T.R.H. was a neglected child under Section 2151.03(A)(4) of the Ohio Revised Code. Section2151.03(A)(4) provides that a neglected child includes any child "[w]hose parents, guardian, or custodian *Page 6 
neglects the child or refuses to provide the special care made necessary by the child's mental condition."
 {¶ 13} T.R.H.'s therapist testified that she began seeing T.R.H. after an incident at school in which T.R.H. told a teacher that his mother and the devil were going to kill him. She testified that T.R.H. had behavioral problems at school, that he displayed aggression towards students and teachers, and that he experienced auditory and visual hallucinations. Child Guidance was able to address T.R.H.'s issues, but needed compliance with his treatment plan. The therapist scheduled weekly sessions with T.R.H. and told his mother about the importance of parental involvement in his therapy. She also arranged for T.R.H. to see a psychiatrist.
 {¶ 14} T.R.H.'s mother and stepfather failed to ensure that T.R.H. complied with his treatment plan. He missed 11 of his 25 therapy sessions, nine without any explanation. He also missed 6 of his 13 psychiatrist appointments. The therapist had difficulty engaging T.R.H.'s mother in the counseling process and she sometimes sent T.R.H. to therapy sessions by himself. T.R.H.'s mother was also reluctant to give him his medication. Both she and T.R.H. told the therapist that he did not take his medicine regularly. T.R.H. also told the therapist that he got in trouble for speaking with her. The therapist testified that because of those issues, T.R.H. achieved only minimal progress addressing his behavior. *Page 7 
 {¶ 15} T.R.H.'s mother and stepfather have asserted that the therapist's testimony was self-contradictory. They note that the therapist never saw any of T.R.H.'s outbursts and had no measure of their severity. She also stated that if an outburst had occurred during a session, she would have gotten T.R.H.'s mother. This contradicted her testimony that his mother merely dropped him off. They have also pointed out that there was no evidence that T.R.H.'s missed medication caused his violent conduct.
 {¶ 16} T.R.H.'s mother and stepfather have not established how his therapist's failure to see his outbursts had any bearing on his missed appointments or his mother's failure to attend sessions. His therapist's testimony regarding a hypothetical outburst was actually that "hopefully, his mother would be in the office, and if she wasn't, I would get her." This was not inconsistent with her other testimony. Furthermore, although T.R.H.'s missed medication may not have caused his violent outbursts, his therapist testified that his progress was hindered by the lack of compliance with his treatment plan.
 {¶ 17} T.R.H.'s mother and stepfather have also asserted that the therapist's testimony was inconsistent with the testimony of a Children Services caseworker. The caseworker testified that there was some improvement in T.R.H.'s behavior throughout the course of his counseling. She testified that T.R.H.'s mother wanted to be at counseling sessions and would not let T.R.H. go by himself. She also testified that T.R.H.'s mother had "come a long way" regarding his medication *Page 8 
and was in compliance with it. She said that Children Services had worked with T.R.H.'s family on a volunteer basis because they had seen movement by his parents on the treatment plan objectives. His mother had accepted his medication and was engaged in her own counseling. She had requested a new therapist for T.R.H., and Child Guidance provided one. The evidence, therefore, according to them, demonstrated that they substantially complied with T.R.H.'s voluntary treatment plan.
 {¶ 18} Although T.R.H.'s mother may have told the caseworker that she would not let T.R.H. attend counseling by himself, his therapy records prove otherwise. The caseworker, herself, admitted that T.R.H.'s stepfather drove him to some sessions and that the stepfather could not attend sessions because of his domestic violence issues. The caseworker also acknowledged that, although T.R.H.'s mother had come a long way regarding his medication, she had admitted T.R.H. missed some doses. The juvenile court, therefore, did not err when it relied on the therapist's testimony instead of the caseworker's.
 {¶ 19} Based on the therapist's testimony and the records maintained by Child Guidance, this Court concludes there was sufficient evidence for the juvenile court to find by clear and convincing evidence that T.R.H.'s mother and stepfather refused to provide him the special care made necessary by his condition. Their assignment of error is overruled regarding the juvenile court's finding of neglect. *Page 9 
 DEPENDENT CHILD {¶ 20} The juvenile court also found that T.R.H. was a dependent child under Section 2151.04(C) of the Ohio Revised Code. Under Section2151.04(C), a dependent child is any child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." The conduct of a parent is relevant insofar as it forms a part of the child's environment and is significant only "if it can be demonstrated to have an adverse impact upon the child sufficiently to warrant state intervention." In reBurrell, 58 Ohio St. 2d 37, 39 (1979). The impact of a parent's conduct "cannot be simply inferred in general, but must be specifically demonstrated in a clear and convincing manner." Id.
 {¶ 21} During his therapy sessions, T.R.H. described incidents of domestic violence that he had witnessed between his mother and stepfather, including seeing his mother pushed down the stairs. He also told his therapist that he had been the victim of domestic violence himself. During one of those incidents, T.R.H.'s stepfather came home intoxicated and threw something at his mother. Although she went downstairs with T.R.H. to the basement, his stepfather followed them and started kicking her in the legs. The therapist's progress notes include descriptions from T.R.H. and his mother of "frequent angry outbursts at home" by his stepfather. In addition, the therapist testified that she had difficulty *Page 10 
building trust with T.R.H. because he "was getting in trouble at home for talking about his family."
 {¶ 22} Considering T.R.H.'s inadequate treatment, his stepfather's domestic abuse, and his punishment for engaging in counseling, this Court concludes there was sufficient evidence for the juvenile court to find by clear and convincing evidence that T.R.H. was a dependent child. T.R.H.'s mother and stepfather's assignment of error is overruled regarding the juvenile court's finding of dependency.
 CONCLUSION {¶ 23} The juvenile court's finding that T.R.H. was a neglected and dependent child was supported by competent and credible evidence. His mother and stepfather's sole assignment of error is overruled and the judgment of the Summit County Court of Common Pleas, Juvenile Division is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. *Page 11 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
 SLABY, P. J. CARR, J. CONCUR *Page 1